IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SHARON A. H.,

                    Plaintiff,

         v.                                              Civil Action No.
                                                         5:20-CV-1014 (BKS/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP                     MELISSA A. DELGUERCIO, ESQ.
250 South Clinton Street, Suite 210   HOWARD D. OLINSKY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                DANIEL STICE TARABELLI, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), to challenge a determination of the Acting

Commissioner of Social Security ("Acting Commissioner") finding that

plaintiff, who was previously found to be disabled, was no longer disabled

as of January 3, 2018, resulting from a continuing disability review.  The

matter has been referred to me for the issuance of a report and

recommendation, pursuant to 28 U.S.C. § 636(b) and Northern District of

New York Local Rule 72.3.  For the reasons set forth below, I recommend a

finding that the Acting Commissioner's determination resulted from the

application of proper legal principles and is supported by substantial

evidence.

I.    BACKGROUND

Plaintiff was born in September of 1972, and is currently forty-nine

years of age.  She was forty years old on July 1, 2013, the date upon which

she was initially found to be disabled, and forty-five years old on the date at

which she was determined to be no longer disabled.  Plaintiff is noted

throughout the record as being either five feet and eight inches or five feet

and nine inches in height, and has weighed between approximately two

hundred and twenty and two hundred and sixty-eight pounds.  Plaintiff

currently lives with her partner and two young sons in Fulton, New York.

Plaintiff reported completing the tenth grade and then obtaining her

GED, after which she attended an adult training program with the New York Board of Cooperative Educational Services ("BOCES"). She later attained an associate's degree in medical transcription, medical coding, and data entry. Plaintiff has worked in the past as a pizza delivery driver, and in both medical and legal offices performing data entry and other work on a computer.

Plaintiff alleges that she suffers from physical impairments including a herniated disc, lumbar spine arthritis, the residual effects of a previous cervical spine discectomy and fusion surgery that caused nerve damage in eight of her fingers, high blood pressure, and gallstones. As is relevant to her applications, plaintiff treated for her impairments with sources at New York Spine and Wellness, Dr. Stephen Robinson at Syracuse Orthopedic Specialists, sources at Delta Medical Services, nurse practitioner ("NP") Elaine Shaben at Fulton Health Center, and Upstate University Rheumatology.

Plaintiff also reports experiencing mental impairments including anxiety, panic attacks, depression, posttraumatic stress disorder ("PTSD"), and substance abuse. Plaintiff has treated for these conditions with family practitioner Dr. Ethan Peaks, Central New York Services, Delta Medical Services, Farnham Family Services, and Ghaly Healing and Wellness

Center.

Plaintiff reported at the hearing held in June 2019 that she continues to suffer from nerve damage as a result of her previous cervical spine disc herniation.  According to the plaintiff, this makes it impossible for her to type on a computer keyboard, although she can do some typing on her phone.  She states that using her hands makes the pain worse.  Plaintiff cannot lift more than ten pounds and it takes her longer to accomplish tasks such as laundry and washing dishes because of her hands.  She also has back pain, so she can walk only short distances and has to prop her leg up while doing dishes to relieve the pressure on her back.  Plaintiff additionally experiences anxiety and panic attacks, which make her "scatterbrained" and would pose difficulties in performing a job, and depression, which causes her to stay in bed all day several times per week. In terms of daily activities, plaintiff often stays home after sending her children to school, watches television, folds laundry although it bothers her hands, does yard work or housework in moderation because it bothers her, and goes shopping with other people.  She also enjoys coloring with pens and is looking forward to fishing.  She experiences nerve pain that makes her fatigued, but which is helped by heat.

II.    <u>PROCEDURAL HISTORY</u>

4

A.    Proceedings Before the Agency

Plaintiff applied for DIB and SSI payments under Title II and Title XVI

of the Social Security Act on September 26, 2012 and December 18, 2012,

respectively.  After a hearing, administrative law judge ("ALJ") Bruce S.

Fein issued a partially favorable decision on March 20, 2015, finding that

plaintiff was disabled as of July 1, 2013.  As part of that finding, ALJ Fein

noted that "[m]edical improvement is expected with appropriate treatment,"

and therefore recommended a continuing disability review be conducted

after 24 months.  On January 23, 2018, the Social Security Administration

found through the continuing disability review process that plaintiff was no

longer disabled as of January 3, 2018.

Plaintiff appealed that determination, which was upheld upon

reconsideration.  After a hearing before ALJ David Romeo on June 5, 2019,

ALJ Romeo found that plaintiff's disability had ended on January 3, 2018,

and she had not become disabled again since that date.  That opinion

became a final determination of the agency on June 29, 2020, when the

Social Security Appeals Council ("Appeals Council") denied plaintiff's

request for review of the ALJ's decision.

B.    The ALJ's Decision

In his decision, ALJ Romeo applied the sequential test for assessing

disability under the continuing disability review standards.  First, he found

that the most recent favorable medical decision, known as the "comparison

point decision" ("CPD") was ALJ Fein's decision from March 20, 2015.  The

ALJ next found that, at the time of the CPD, plaintiff had medically

determinable impairments of cervical spine degenerative disc disease,

status post spinal fusion surgery, lumbar spine degenerative disc disease

with radiculopathy, bilateral hand parasthesias, and anxiety disorder, and a

resulting RFC with the following limitations:

> [the claimant could] lift and carry ten pounds
> occasionally, sit for six hours in an eight-hour day,
> stand and/or walk for two hours in an eight-hour day,
> occasionally engage in all postural activities, and
> occasionally reach, finger, and handle.  The
> claimant was limited to simple, routine, and
> repetitive tasks in a low stress job defined as one
> requiring only occasional decision-making,
> occasional[] changes in the work setting, and
> occasional use of judgment.

Next, the ALJ found that plaintiff has not engaged in substantial

gainful activity through the relevant period.  Fourth, ALJ Romeo found that,

since January 3, 2018, plaintiff has had medically determinable severe

impairments of cervical spine degenerative disc disease, status post spinal

fusion surgery, lumbar spine degenerative disc disease with radiculopathy,

bilateral hand parasthesias, anxiety disorder, depression, panic disorder,

PTSD, and cannabis dependence.

Fifth, ALJ Romeo examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not currently meet or medically equal any of the listed, presumptively disabling conditions set forth in the Commissioner's regulations, specifically considering Listings 12.04, 12.06, and 12.15.

ALJ Romeo next found that medical improvement occurred on January 3, 2018, and that such medical improvement was related to an increase in plaintiff's residual functional capacity, such that she is now able to perform a range of sedentary work with the following limitations:

> she can occasionally operate foot controls. She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She can never climb ropes, ladders, or scaffolds. She can frequently reach, handle, finger, and feel with both upper extremities. She can understand, remember, and carry out simple instructions and make simple work-related decisions. She can remain on task while sitting. She can balance on level surfaces while standing and walking but never on narrow, slippery, or erratically moving surfaces. She can tolerate a low level of work pressure, defined as work not requiring multitasking, very detailed job tasks, significant independent judgment, very short deadlines, teamwork completing job tasks, more than occasional changes in the work setting, or more than occasional contact with the public.

Proceeding to the next step in the sequential analysis, the ALJ found

that plaintiff is unable to perform her past relevant work.  To assess

plaintiff's ability to perform other work in the national economy, the ALJ

consulted a vocational expert regarding how plaintiff's limitations impact the

occupations she can perform with the range of sedentary work specified

above, and concluded based on the vocational expert's testimony that,

since January 3, 2018, plaintiff has remained able to perform other

available work existing in significant numbers in the national economy,

citing as representative positions the jobs of addresser, telephone

quotation clerk, and call-out operator.  Based upon these findings, ALJ

Romeo concluded that plaintiff was no longer disabled as of January 3,

2018, and has not become disabled again since that date.

C.    This Action

Plaintiff commenced this action on August 31, 2020.[1]  In support of

her challenge to the ALJ's determination, plaintiff argues the ALJ's finding

that she experienced medical improvement is not supported by substantial

evidence because (1) the ALJ relied on opinion evidence from sources who

did not compare her functioning at the CPD to her later functioning and did

---

[1]       This action is timely, and the Commissioner does not argue otherwise.  It has
been treated in accordance with the procedures set forth in General Order No. 18.
Under that General Order, the court treats the action procedurally as if cross-motions for
judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules
of Civil Procedure.

not assess how her functioning improved; (2) the ALJ failed to explain her reliance on the newer opinion from consultative examiner Dr. Kalyani Ganesh despite the fact that ALJ Fein rejected an earlier opinion from Dr. Ganesh issued prior to the CPD; and (3) the ALJ did not adequately and appropriately explain which evidence he was relying upon to support his conclusion that plaintiff's condition has even changed, much less improved. Plaintiff requests that, because the ALJ has not shown that the Acting Commissioner's burden to prove medical improvement has been or can be met based on the evidence, remand solely for calculation of benefits is warranted.

Oral argument was conducted in this matter, by telephone, on April 19, 2022, at which time decision was reserved.

## III.   DISCUSSION

### A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221

9

F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether an ALJ has applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a

reviewing court considers the whole record, examining evidence from both

sides, because an analysis on the substantiality of the evidence must also

include that which detracts from its weight." *Williams*, 859 F.2d at 258

(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951);

*Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

    B.    <u>Disability Determination: The Continuing Disability Review</u>
<u>Process</u>

To be considered disabled, a claimant seeking benefits must

establish that he or she is "unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1382c(a)(3)(A) (2015). In addition, the claimant's

> physical or mental impairment or impairments [must
> be] of such severity that he is not only unable to do
> his previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

*Id.* § 1382c(a)(3)(B).

Under the "continuing disability review" standard, the decision-maker

follows a slightly different procedure than the ordinary five-step disability

sequential evaluation, considering the following steps: (1) whether the claimant is engaging in substantial gainful activity; (2) if they are not, whether he or she has an impairment or combination of impairments which meets or equals an impairment listed in appendix 1 of subpart 404; (3) if they do not, whether there has been medical improvement shown by a decrease in medical severity; (4) if there has been medical improvement, whether that improvement is related to the claimant's ability to do work in that it results in an increase in residual functional capacity compared to the time of the most recent favorable medical decision; (5) if the medical improvement is related to the ability to do work, whether the claimant's current impairments in combination are severe; (6) if one or more impairment is severe, the decision-maker will then assess the claimant's current ability to engage in substantial gainful activity by assessing his or her residual functional capacity based on current impairments and consider whether he or she can perform the work they performed in the past; and (7) if the claimant cannot perform his or her past relevant work, the decision-maker assesses whether they can perform other work existing in significant numbers in the national economy.  20 C.F.R. §§ 404.1594(f), 416.994(f).

For continuing disability review claims, the burden to demonstrate medical improvement relating to the claimant's ability to perform work "rests

with the Commissioner at every step." *DeRonde v. Astrue*, 11-CV-0998,

2013 WL 869489, at *3 (N.D.N.Y. Feb. 11, 2013) (Hines, M.J.) (citing 20

C.F.R. § 404.1594(f)(1)-(8); *Chavis v. Astrue*, 07-CV-0018, 2010 WL

624039, at *4 (N.D.N.Y., Feb. 18, 2010) (Kahn, J., Bianchini, M.J.); *Abrams

v. Astrue*, 06-CV-0689, 2008 WL 4239996, at *2 (W.D.N.Y. Sept. 12,

2008)).  However, even though the burden rests with the Commissioner, a

claimant's benefits may be terminated so long as "there is substantial

evidence demonstrating a 'medical improvement' which enables the

individual to engage in substantial gainful activity."  *Baker v. Comm'r of

Soc. Sec.*, 12-CV-1715, 2014 WL 1280306, at *4 (N.D.N.Y. Mar. 27, 2014)

(McAvoy, J.) (quoting *Matice v. Comm'r of Soc. Sec.*, 99-CV-1834, 2004

WL 437472, at *3 (N.D.N.Y. Feb. 11, 2004) (Sharpe, J.)).

> Medical improvement is any decrease in the medical
> severity of your impairment(s) which was present at
> the time of the most recent favorable medical
> decision that you were disabled or continued to be
> disabled. A determination that there has been a
> decrease in medical severity must be based on
> changes (improvement) in the symptoms, signs
> and/or laboratory findings associated with your
> impairment(s)....

20 C.F.R. § 404.1594(b)(1).  "[T]he Commissioner has the burden of

persuasion in showing that [medical improvement] has occurred."  *Brown v.

Colvin*, 14-CV-725, 2015 WL 4488670, at *5 (N.D.N.Y. July 22, 2015)

(D'Agostine, J., Baxter, M.J.) (citing *Abrams,* 2008 WL 4239996, at *2;

*Lopez v. Barnhart,* 05-CV-19, 2006 WL 1272644, at *2 n. 2 (D. Conn. Mar.

1, 2006)) (internal citations omitted).

C.    Analysis

The parties have not challenged the ALJ's finding that the

comparison point decision ("CPD") in this case is ALJ Fein's decision dated

March 20, 2015, in which he found plaintiff disabled beginning July 1, 2013.

The ALJ was therefore required to compare the severity of plaintiff's

impairments as assessed in that decision with their current severity when

assessing whether medical improvement has occurred.  *Veino v. Barnhart*,

312 F.3d 578, 586-87 (2d Cir. 2002).

In the CPD, ALJ Fein found that plaintiff had severe impairments

including degenerative disc disease of the lumbar spine with radiculopathy,

degenerative disc disease of the cervical spine, myelopathy, status post

anterior disc decompression and fusion surgery, parasthesias in both

hands, and anxiety.  Administrative Transcript ("AT") at 71.[2]  He found that

plaintiff retained the residual functional capacity to perform less than a full

range of sedentary work, in that she could lift or carry ten pounds

---

[2]     The Administrative Transcript is found at Dkt. No. 16, and will be referred to
throughout this decision as "AT__."

14

occasionally, sit for six hours in an eight-hour workday, and stand and/or walk for two hours in an eight-hour workday, with additional nonexertional limitations of occasional postural activities, the ability to occasionally reach, finger, and handle, and an ability to perform simple, routine, and repetitive tasks in a low stress job defined as requiring only occasional decision-making, occasional changes in the work setting, and occasional use of judgment.  AT 72.

Plaintiff argues that, in his recent decision, ALJ Romeo merely assessed the evidence from the period following the CPD in isolation rather than explaining how plaintiff's condition actually improved after the date of the CPD.  Dkt. No. 21, at 21-23.  She specifically contends that the ALJ's reliance on the post-CPD opinions from consultative examiner Dr. Kalyani Ganesh and nonexamining state agency medical consultant Dr. S. Padmaraju is insufficient to meet the Acting Commissioner's burden to show medical improvement because neither of those sources compared plaintiff's previous functioning with her current functioning, or provided any assessment regarding the extent to which plaintiff's functioning had improved.  Dkt. No. 21, at 21-22.

To the extent plaintiff argues that the ALJ completely failed to articulate any finding of medical improvement, that argument lacks merit

since the ALJ's decision clearly states that he found plaintiff did experience medical improvement by January 3, 2018, based on "a decrease in medical severity of the impairments present at the time of the CPD," and includes a discussion of some of the evidence supporting that finding.  AT 36.  The ALJ also specifically found that the medical improvement related to plaintiff's ability to work because it resulted in an increase in her RFC, and discussed the evidence that supported that RFC as of the date of medical improvement.  AT 37-41.  The case relied on by plaintiff, *Richard L. v. Comm'r of Soc. Sec.*, 17-CV-0443, 2018 WL 4522056 (N.D.N.Y. June 26, 2018) (Stewart, M.J.), *adopted in relevant part by* 2018 WL 3727355 (Kahn, J.), is distinguishable.  In that case, the relevant ALJ decision appears to have contained no findings at all related to medical improvement such that it was not clear that the ALJ had applied the continuing disability review analytical framework, in a stark contrast to the situation here.  *Richard L.*, 2018 WL 4522056, at *2.  The question is therefore not whether the ALJ articulated a finding related to medical improvement, which he did, but rather whether he provided a sufficient explanation to permit meaningful review and show that the resulting finding is supported by substantial evidence.

Based on a comparison between the RFC in the CPD and the RFC

set forth in ALJ Ramos' decision, it appears that material improvement that impacted her ability to work occurred in connection with plaintiff's capacity to handle and finger, limitations which are pivotal to the performance of sedentary work.  At the CPD date, plaintiff's ability to perform those functions was assessed as only occasional, while the current decision found that she can perform such activities frequently.  The vocational expert who testified at the 2015 hearing stated that the "vast majority" of jobs at the unskilled level would involve fingering and handling in excess of occasional, and therefore there were no available jobs that plaintiff could perform when ALJ Fein factored in the limitation to only occasional handling and fingering.  AT 150-51, 158-59.[3]

The ALJ's finding of work-related medical improvement related to plaintiff's use of her hands is well-supported by substantial evidence.  In the CPD, ALJ Fein noted in particular that the MRI of plaintiff's cervical spine

---

[3]      Although there is some question as to whether the RFC also reflects an improvement in plaintiff's mental functioning, plaintiff's arguments both in her brief and at the hearing focus almost exclusively on a discussion of plaintiff's physical functioning. Dkt. No. 21, at 19-24.  Because plaintiff has not challenged any finding of medical improvement related to her mental impairments, and because there is no indication of error in the ALJ's findings regarding plaintiff's mental functioning, any such potential arguments concerning the mental findings should be deemed waived.  *See Sean Michael S. v. Comm'r of Soc. Sec.*, 20-CV-0942, 2021 WL 5918922, at *6 n.5 (N.D.N.Y. Dec. 15, 2021) (Peebles, M.J.) (finding that argument raised for the first time at oral argument, after briefing was completed, should be deemed waived, and, that, even if the argument was considered, it would be rejected).

from March of 2014, history of surgery in 2013, continued numbness and pain in her hands in October 2014, and the opinion of treating physician Dr. Stephen Robinson provided the basis for his RFC finding regarding plaintiff's ability to use her hands.  AT 73-74.  The record from before the CPD shows that, in February 2014, Dr. Robinson noted that plaintiff had increased paresthesia in her hands on testing, likely secondary to a chronic spinal cord injury, and he started her on Neurontin.  AT 825.  In March 2014, plaintiff reported that she was still experiencing paresthesia, weakness, and numbness in both hands, although Neurontin was helping, and she was observed to have a slight increase in paresthesia with testing, but retained full function of both upper extremities.  AT 820.  In April 2014, plaintiff continued to report hand symptoms and was observed to have slightly positive paresthesia in her hands, although with full motor function. AT 817.  In October 2014, plaintiff reported still having hand numbness and weakness but that her strength was improving, and she could use her hands fairly well.  AT 975.  She was observed to have somewhat limited neck range of motion, but full motor function of the upper extremities and strong handgrip bilaterally. *Id.*  In February 2015, plaintiff reported continuing numbness, tingling, pain and difficulty using her hands, but she had full motor strength in her upper extremities, and both she and Dr.

18

Robinson agreed at that point that she would not require any more consistent treatment.  AT 1231.[4]

As to evidence from after issuance of the CPD, in September 2015, plaintiff reported that she was taking gabapentin for the neuropathic symptoms related to her neck injury, but did not report any specific hand symptoms, and the physical examination from that visit did not note any abnormal findings related to her neck or hands.  AT 1033-34.  In November 2015, plaintiff did not report any symptoms related to her hands; her neck was normal upon inspection and she had intact motor strength in her upper extremities.  AT 1037-38.  Similar notations are documented in treatment reports from January, June, and July of 2016.  AT 1040-41, 1048, 1051, 1054.

At a consultative examination conducted by Dr. Kalyani Ganesh in November 2017, plaintiff reported that she had some tingling and numbness in her fingertips with throbbing at times, and was observed to have a full range of motion in her neck, shoulders, elbows, forearms and wrists bilaterally, full strength in her upper extremities, and intact hand and finger dexterity.  AT 1123-24.

---

[4]      I note that this treatment record from Dr. Robinson was not part of the record considered by ALJ Fein when rendering the CPD.

In February 2018, plaintiff reported sensory disturbances, numbness, and tingling in her hands, but she was observed to have normal neck functioning and normal neurological functioning.  AT 1160-61.  Later that month, plaintiff sought treatment related to her back, but did not mention any difficulties with her hands.  AT 1141.  The range of motion in her cervical spine was observed to be normal, she had full strength in her upper extremities, and sensation to light touch throughout her upper extremities was also normal.  AT 1143.  In April 2018, plaintiff reported chronic neck pain, but did not report any issues with her hands.  AT 1169.  Her neck was observed to be normal.  AT 1172.  In January 2019, plaintiff specifically denied any motor or sensory disturbances.  AT 1329.  At the end of January 2019, she did not report any issues with her hands and denied any tingling, numbness, or weakness.  AT 1341-43.

As can be seen, although the record from before the CPD showed some ongoing issues with numbness or weakness in plaintiff's hands, the record as a whole from after the CPD reveals no objective verification that those symptoms persisted, and only a handful of instances where plaintiff even subjectively reported such symptoms to providers.  Indeed, the February 2015 treatment record from Dr. Robinson – which, again, was not considered by ALJ Fein as part of his findings in the CPD, and which was

from only a few weeks prior to the CPD – shows that plaintiff's hand symptoms had sufficiently resolved by that time such that both she and Dr. Robinson felt that she no longer required ongoing management of that condition other than continued prescriptions for Neurontin/gabapentin.

I note, moreover, that the CPD finding was based in part on the previous opinion of Dr. Stephen Robinson, who was plaintiff's treating orthopedist. The record does not contain any updated medical opinion, and specifically one related to plaintiff's hand functioning, from any treating source for the period post-dating the CPD. This fact does not represent any failure to develop the record, however, given that the complete lack of verification of any ongoing hand symptoms would have been more than sufficient for the ALJ to make a reasoned determination regarding whether plaintiff's ability to use her hands had improved since the CPD. *See Sarah C. v. Comm'r of Soc. Sec.*, 19-CV-1431, 2021 WL 1175072, at *10 (N.D.N.Y. Mar. 29, 2021) (Scullin, J.) (concluding that "the fact that the record does not contain any 'function-by-function opinions' from any of [p]laintiff's treating sources addressing her mental or physical abilities does not create a gap in the record or render the record incomplete") (citing *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017)).

Plaintiff relies heavily on the statement from Dr. Robinson from 2014

that her hand symptoms were "likely secondary to chronic myelomalacic changes in the spinal cord, representing chronic cord injury" as standing for proof that plaintiff's symptoms and functioning could not have improved, and which cannot be rebutted by the ALJ's citation to only the observation of Dr. Ganesh that plaintiff had intact hand functioning.  Dkt. No. 21, at 23.  However, even if Dr. Ganesh's finding was the only evidence discussed in the ALJ's decision, her argument ignores the fact that it is not the only evidence in the record that supports the ALJ's conclusion.  As was already mentioned, the medical record from after the CPD is notably and conspicuously devoid of documentation of abnormalities in her upper extremities, particularly compared to medical findings from 2014.  *See, e.g.*, AT 1033-34, 1037-38, 1040-41, 1048, 1051, 1123-24, 1141, 1143, 1160-61, 1169, 1231, 1329, 1341-43.  It is also notable that plaintiff's own recitation of the pertinent medical evidence in her brief mentions no observations regarding her hands from the post-CPD period, much less observations of limitations that would contradict the ALJ's finding that medical improvement had occurred related to plaintiff's ability to use her hands.  Dkt. No. 21, at 11-15.  The ALJ was not required to discuss every piece of evidence in order to show that it had been considered, nor does the ALJ's failure to provide a more detailed discussion of the evidence

prevent meaningful review of his findings in this case.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (noting that "an ALJ is not required to discuss every piece of evidence submitted," and that "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered"); *LaRock ex rel. M.K. v. Astrue*, 10-CV-1019, 2011 WL 1882292, at *6 (N.D.N.Y. Apr. 29, 2011) (Bianchini, M.J.) (discussing that "there is no obligation for the ALJ to discuss every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision"), adopted by 2011 WL 1883045 (N.D.N.Y. May 17, 2011) (Mordue, C.J.).

I note, additionally, that although the ALJ did cite consultative examiner Dr. Ganesh's examination results on many occasions to support his various findings related to medical improvement and the RFC, he notably did not rely heavily on Dr. Ganesh's opinion itself when determining that the medical improvement occurred related to her ability to work.  The ALJ afforded Dr. Ganesh's opinion only "some weight," and it is clear from a comparison of the RFC and that opinion that he did not rely overmuch on the opinion, particularly in that Dr. Ganesh did not opine any limitations related to use of the hands, while the ALJ limited plaintiff to frequent use. AT 40.  The ALJ also afforded only "some weight" to the opinions from the

nonexamining state agency medical consultants, whose opinions were far less restrictive than the RFC.  AT 40-41.  Accordingly, to the extent that plaintiff argues that the ALJ erroneously relied too heavily on the opinion evidence from these sources, that argument is not substantiated by the ALJ's decision.

Further, to the extent that plaintiff argues that medical sources must themselves compare how a claimant's functioning has changed over time in cases involving findings of medical improvement, plaintiff cites no authority to support that proposition.  It was not the responsibility of the medical sources to compare their own more recent assessments of functioning with their previous evaluations, nor is the determination as to whether their observations and/or findings are consistent with one another or show improvement in isolation the operative question.  Rather, it is the duty of the ALJ to assess whether improvement has occurred based on a comparison of the overall assessment of functional ability in the CPD – which is a balance of all of the evidence that was presented at the time of the CPD, not just those specific examinations or opinions – with the current picture of plaintiff's functioning.  Plaintiff's argument notably ignores the fact that the ALJ is not required to accept individual assessments unless they are consistent with the evidence, and that, in both the CPD and the current

ALJ decision, both ALJs found that the opinions of Dr. Ganesh in particular were not entitled to much weight when formulating the overall RFC findings.  *See* AT 74 (ALJ Fein affording "little weight" to Dr. Ganesh's opinion due to inconsistencies with the other evidence, including the opinion of treating physician Dr. Robinson), AT 40 (ALJ Romeo affording only "some weight" to Dr. Ganesh's opinion).  Plaintiff's argument that the ALJ erred by failing to explain "why Dr. Ganesh's opinion, which was once discounted as being a one-time examination, unworthy of weight, provided any insights into Plaintiff's supposed level of improvement" is misplaced. Dkt. No. 21, at 21-22.

Based on the foregoing, I recommend a finding that the ALJ appropriately applied the required regulatory analysis when assessing plaintiff's medical improvement and that his findings in that respect, and as a whole, are supported by substantial evidence.

IV.   SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Acting Commissioner's determination, I recommend a finding that the Acting Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.  Accordingly, it is hereby respectfully

RECOMMENDED that the Acting Commissioner's decision be AFFIRMED, defendant's motion for judgment on the pleadings (Dkt. No. 24) be GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 21) be DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:     April 22, 2022
           Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge